IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARY REYNAGA, *as Mother*
*of J.L.E., a Minor*                                                       PLAINTIFF


v.                              CIVIL NO. 12-5275

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                             DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Mary Reynaga, brings this action on behalf of her minor son, J.L.E., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying J.L.E.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act).

**I.     Procedural Background:**

Plaintiff protectively filed the application for SSI on her minor son J.L.E.'s behalf on July 6, 2009, alleging that J.L.E., who was ten years of age when the application was filed, is disabled due to borderline intellectual functioning, an anxiety disorder, a depressive disorder, a disruptive behavior disorder, attention deficit hyperactive disorder (ADHD), oppositional defiant disorder, and a personality disorder. (Tr. 126). An administrative hearing was held on November 23, 2010, at which Plaintiff, after being informed of her right to representation, testified without the assistance of a representative. (Tr. 20, 38-84).

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

AO72A
(Rev. 8/82)

The ALJ, in a written decision dated August 8, 2011, found that J.L.E. had the following severe impairments: borderline intellectual functioning, an anxiety disorder not otherwise specified, and a disruptive behavior disorder. (Tr. 23). However, the ALJ further found that as J.L.E. did not have an impairment or combination of impairments that was medically or functionally equal to a listed impairment, J.L.E. was not disabled. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence submitted by Plaintiff, denied that request on October 23, 2012. (Tr. 1-7). Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and this case is before the undersigned pursuant to the consent of the parties. (Docs. 7, 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d). In the present case, the ALJ found that J.L.E.'s claim failed at step three, as J.L.E. did not have an impairment that met or medically or functionally equaled a listed impairment. The ALJ specifically considered the Listings in 112.00 when making this determination. 20 C.F.R. Pt. 404, Subpt. P, App.

The Court finds there is substantial evidence in the record to support the ALJ's determination that J.L.E.'s impairments did not meet or medically equal in severity any listed impairment. See 20 C.F.R. Part 404, Subpt. P, App. 1, Part B. The Court next addresses whether J.L.E.'s impairments are functionally equal to any listed impairment, or, in other words, whether "what [J.L.E.] cannot do because of [his] impairments . . . is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria." 20 C.F.R. § 416.926a(a). Functional equivalence may be established by demonstrating marked limitations in two, or extreme limitations[2] in one of the following "domains:" 1) acquiring and

---

[2]((2)Marked limitation -(I)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean....

using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. See 20 C.F.R. § § 416.926(b)(1), 416.926a(d). The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers. SSR 09-2P. In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information." Lawson v. Astrue, 2009 WL 2143754, at *9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. § 416.9249.

### III. Discussion:

Plaintiff argues the following in this appeal: 1) the ALJ failed to properly evaluate and make a finding regarding J.L.E.'s GAF scores; and 2) the ALJ failed to properly analyze J.L.E.'s subjective complaints. Defendant argues substantial evidence supports the ALJ's determination. The Court will address these arguments when discussing each domain separately.

#### A. Domains:

##### 1. Acquiring and Using Information:

The ALJ found that J.L.E. had less than marked limitation in this domain. In making this determination, the ALJ noted that Plaintiff's teacher had indicated J.L.E. demonstrated a

---

(3)Extreme limitation - (I) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § § 416.926a(e)(2) and (3).

weakness in reading, which resulted in J.L.E. being placed in special education classes. The ALJ noted that Dr. Stephen P. Nichols, a consultative examiner, reported J.L.E. would have difficulty keeping up with children his age; however Dr. Nichols also noted that J.L.E. had the capacity to cope with, concentrate, and persist in completing tasks. The ALJ also noted that J.L.E. had been started on medication for his ADHD, and had responded well to treatment. Plaintiff testified at the administrative hearing in November of 2010, that with medication, J.L.E. was doing better in school. Counseling session notes further revealed that J.L.E. was cooperative, and that no cognitive impairments were noted during most of the sessions.

In further support of his finding, the ALJ noted that non-examining medical consultants, Dr. Frazier Kennedy and Dr. Susan Manley, opined that J.L.E. had less than marked limitation in this domain. (Tr. 224-229, 247-253).

With respect to Plaintiff's first argument that the ALJ did not mention J.L.E.'s GAF scores, "[t]he Eighth Circuit has rejected an argument that the ALJ's failure to discuss GAF scores requires reversal." Martin ex rel. RTDR v. Colvin, No. 4:12-cv-00422, 2013 WL 4591374 at *7 (Aug. 28, 2013), citing Wright v. Astrue, 489 Fed. Appx. 148, 149 (8th Cir. 2012)(unpublished).

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that J.L.E. had less than marked limitation in acquiring and using information.

**2. Attending and Completing Tasks**:

The ALJ found that J.L.E. had less than marked limitation in attending and completing tasks. In making this determination, the ALJ noted that a teacher questionnaire indicated that

J.L.E. had difficulty completing work accurately, finishing work on time, and working without distracting others. The ALJ also noted that J.L.E.'s teacher noted that J.L.E. was able to refocus with prompts or standing in close proximity. As noted in the discussion of acquiring and using information above, Dr. Nichols observed J.L.E. was able to maintain attention, persist and complete an hour-long IQ test without great difficulty. The ALJ pointed out that both J.L.E.'s mother, and the Ozark Guidance therapy notes indicated that J.L.E. was able to focus better with medication.

The Court acknowledges that Dr. Kennedy opined that J.L.E. had marked limitation in this domain, while Dr. Manley opined J.L.E. had less than marked limitation. The Court finds substantial evidence of record to support the ALJ's finding, but further notes that one domain with marked limitation would not alter the determination in this case.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that J.L.E. had less than marked limitation in attending and completing tasks.

**3. Interacting and Relating with Others**:

The ALJ found that J.L.E. had less than marked limitation in interacting and relating with others. The ALJ noted that J.L.E.'s teacher indicated J.L.E. had no difficulties in his ability to interact and relate with others. The ALJ also noted that Dr. Nichol's stated that J.L.E. communicated and interacted in a socially adequate manner during the evaluation, and that J.LE.'s speech was fluent and of normal rate and volume. The record further revealed that while J.L.E. had some behavioral issues at school, and that Plaintiff reported J.L.E. did not get along with his siblings and frequently did not obey her; the record also revealed that J.L.E. was able

to spend a week at a camp living in a cabin with fifteen people without any problems, and that J.L.E. reported he was happy when he was not home. The record also revealed that Plaintiff testified that she was doing everything that she could to help her son; however the record revealed that Plaintiff was unwilling to participate in family sessions at times because she saw no benefit to family sessions, and that Plaintiff did not ensure that J.L.E. was compliant with taking his medication as prescribed. (Tr. 383, 402).

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Kennedy and Dr. Manley, opined that J.L.E. had less than marked limitation in this domain.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that J.L.E. had less than marked limitation in interacting and relating with others.

**4. Moving About and Manipulating Objects**:

The ALJ found that J.L.E. had no limitation in moving about and manipulating objects. In making this determination, the ALJ noted that Plaintiff reported J.L.E. played soccer and baseball in the park during the summer. Dr. Nichols noted J.L.E. was able to perform most activities of daily living. The record revealed that J.L.E. also attended a camp for a week in the summer where he was able to swim, canoe, and use a paddle boat. (Tr. 63-64).

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Kennedy and Dr. Manley, opined that J.L.E. had no limitation in this domain.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that J.L.E. had no limitation in moving about and manipulating objects.

**5. Caring for Yourself**:

The ALJ found that J.L.E. had less than marked limitation in caring for himself. In making this determination, the ALJ noted Dr. Nichols report that J.L.E. had no difficulty with performing activities of daily living, but thought that J.L.E. chose to disobey Plaintiff. The ALJ noted that Plaintiff reported J.L.E. was able to bathe, dress himself, brush his teeth, and prepare simple snacks when reminded. The ALJ noted that J.L.E.'s teacher indicated that J.L.E. had problems handling frustration properly and knowing when to ask for help. Counselor notes for the relevant time period revealed that J.L.E. had worked on techniques to help him handle frustration and to curb his impulsive behaviors. The record revealed the when J.L.E. was compliant with taking his medication he performed better in school.

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Kennedy and Dr. Manley, opined that J.L.E. had no or less than marked limitation in this domain.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that J.L.E. had less than marked limitation in caring for himself.

**6. Health and Physical Well-Being**:

The ALJ found that J.L.E. had no limitation in health and physical well-being. In making this determination, the ALJ noted the Ozark Guidance notes indicated J.L.E. was extremely sensitive to smell. The record indicated that J.L.E. also reported to Dr. Nichols that he

sometimes had stomachaches and headaches. However, Plaintiff reported that J.L.E. complained of stomachaches to get out of going to school. The ALJ noted that J.L.E. had not made these complaints since starting medication. There is also little to no medical records documenting that J.L.E. complained of stomachaches or headaches on a continual basis.

In further support of his finding, the ALJ also noted that non-examining medical consultants, Dr. Kennedy and Dr. Manley, opined that J.L.E. had no limitation in this domain.

Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's finding that J.L.E. had no limitation in health and physical well-being.

## IV. Conclusion

Based upon the foregoing, the Court hereby finds, after considering all the relevant evidence in the record, that there is substantial evidence to support the ALJ's findings and conclusions. Accordingly, the Court hereby affirms the ALJ's decision and dismisses Plaintiff's case with prejudice.

IT IS SO ORDERED this 14th day of February, 2014.

/s/ Erin L. Setser
 HON. ERIN L. SETSER
 UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)